

SO ORDERED,

**Judge Jason D. Woodard**

**United States Bankruptcy Judge**

**The Order of the Court is set forth below. The case docket reflects the date entered.**

# UNITED STATES BANKRUPTCY COURT
# NORTHERN DISTRICT OF MISSISSIPPI

In re:

|  | )  |  |  |
|---|---|---|---|
| **CHRISTOPHER WILHITE and** | ) | Case No.: | 16-10632-JDW |
| **CHRISTINA J. WILHITE,** | ) | | |
|  | ) | | |
| Debtors. | ) | Chapter: | 7 |

| **RESOURCE ENTERTAINMENT** | ) |  |  |
|---|---|---|---|
| **GROUP LLC,** | ) | | |
|  | ) | | |
| Plaintiff, | ) | | |
|  | ) | | |
| v. | ) | A.P. No.: | 16-01053-JDW |
|  | ) | | |
| **CHRISTINA J. WILHITE,** | ) | | |
|  | ) | | |
| Defendant. | ) | | |

## <u>MEMORANDUM OPINION AND ORDER</u>

This adversary proceeding came before the Court for trial regarding the

*Complaint* (the "Complaint")(A.P. Dkt. # 1),[1] filed by Resource Entertainment

Group, LLC (the "Creditor") against the debtor, Christina Wilhite (the

___

[1] Citations to the docket in the main bankruptcy case will be to "Bankr. Dkt. #___" and citations to
the adversary proceeding will be to "A.P. Dkt. #___".

"Debtor"). The Debtor filed a *Response to Complaint* (A.P. Dkt. # 4) generally denying all of the allegations of the Complaint. The Creditor seeks a determination that the state court judgment obtained by it against the Debtor is nondischargeable pursuant to 11 U.S.C. § 523(a)(2) and (a)(6).[2] The Debtor seeks an award of attorney fees and costs under § 523(d).

A trial was held on January 26, 2017. At the trial, Matthew Macaw appeared as counsel for the Creditor, and Will Fava appeared as counsel for the Debtor. The Court heard arguments and received documents into evidence. The Debtor testified, as did Rollin Riggs, a representative of the Creditor. After a careful review of the evidence, the pleadings, and the applicable law, this Court finds and concludes that the Creditor has failed to carry its burden and that the Creditor's state court judgment against the Debtor is dischargeable.

## I. <u>JURISDICTION</u>

This Court has jurisdiction pursuant to 28 U.S.C. §§ 151, 157(a) and 1334(b) and the United States District Court for the Northern District of Mississippi's Order of Reference of Bankruptcy Cases and Proceedings Nunc Pro Tunc Dated August 6, 1984. This is a core proceeding arising under Title 11 of the United States Code as defined in 28 U.S.C. § 157(b)(2)(I) and (O).

---

[2] Unless otherwise indicated, all chapter, section and rule references are to the "Bankruptcy Code," 11 U.S.C. § 101-1532, or to the Federal Rules of Bankruptcy Procedure, Rules 1001-9037.

## II. <u>FINDINGS OF FACT</u>[3]

Prior to the trial, the parties submitted an *Agreed Statement of Undisputed Facts* (A.P. Dkt. # 22). The stipulated facts are incorporated here, notated by citation to A.P. Dkt. # 22, along with additional findings made by the Court after the trial.

The Debtor previously owned The Boiling Point Seafood and Oyster Bar ("The Boiling Point") and the Wilhite Restaurant Group, LLC (A.P. Dkt. # 22). The Debtor decided to host an event to celebrate the second anniversary of The Boiling Point. This event entailed having several different bands perform at the restaurant throughout the day, with Lord T & Eloise (the "Band") giving the final performance that night. The Debtor was familiar with the Band and its reputation, aside from knowing one of the band members personally, and she believed the Band would draw a large crowd. More specifically, she was under the impression that the Band had a large following in the Memphis area, and she wanted to draw new customers from Memphis to her restaurant in Southaven. The Debtor contacted the Creditor (a booking agent) about hiring the Band.

On September 22, 2014 the Debtor, personally and on behalf of The Boiling Point, executed a "Performance Agreement" with the Creditor (A.P. Dkt. # 22). The Creditor was to secure the Band, which would play at The

---

[3] To the extent any of the findings of fact are considered conclusions of law, they are adopted as such. To the extent any of the conclusions of law are considered findings of fact, they are adopted as such.

Boiling Point on October 25 from 9:30 p.m. to 11:00 p.m.  In exchange, the Debtor agreed to pay $7,000 to the Creditor (A.P. Dkt. # 22).  The Performance Agreement provided that the $7,000 was to be paid by a $3,500 deposit due on September 27[4] with the remaining $3,500 due on October 20, 2014 (A.P. Dkt. # 22).  The Debtor delivered a check to the Creditor on October 22 for the full payment of $7,000 (A.P. Dkt. # 22), which the Creditor accepted.  The check was made payable to the Creditor, was written from an account owned by Wilhite Restaurant Group, LLC, was signed by the Debtor, and the check's memo line indicated that it was for "Lord T & Eloise" (A.P. Dkt. # 22).

On October 25, the Band did in fact perform at The Boiling Point restaurant (A.P. Dkt. # 22) but did not draw the large attendance the Debtor expected.  The Debtor, who was the only trial witness also present for the event, testified that there were few people at the restaurant for the Band's performance.  After starting at 9:30 p.m., the Band stopped playing around 10:00 or 10:10 p.m., and left shortly thereafter.  The Debtor testifies that she asked a band member why they had stopped and was told that the crowd was small and they did not feel like they had to keep playing.  She did not force

---

[4] Per the Performance Agreement, the $3,500 deposit was due on September 17, 2014.  However, the contract was not signed until September 20.  At trial, the evidence showed that this was a scrivener's error. The correct date was September 27, 2014, not September 17th.

them to stay, nor did she bring up the fact that they were scheduled to play until 11:00 p.m.

Instead, the next day the Debtor went online and issued a stop payment on the check so that it would not be honored.  The Debtor also moved all the money out of the operating account from which she had written the check to the Creditor.  A few days later, on October 28, the Creditor was notified by First Tennessee Bank that the check written by the Debtor was being returned for "not sufficient funds" (A.P. Dkt. # 22).  The Creditor tried to deposit the check once more on November 3rd and was informed by First Tennessee Bank that a "stop payment" had been issued on the check (A.P. Dkt. # 22).

Sometime after the Creditor learned that the check was worthless, Rollin Riggs, on behalf of the Creditor, went to The Boiling Point and met with the Debtor.  The Debtor voiced her frustration with the Band's performance.  She gave two reasons for not paying the Creditor: (1) that the Band did not play for the full amount of time, and (2) that the Creditor and the Band did not promote the event.

The Debtor did not pay the Creditor any portion of the $7,000 (A.P. Dkt. # 22).  The Creditor then filed a lawsuit against the Debtor in the General Sessions Court of Shelby County, Tennessee (the "State Court") and received a judgment against her and Wilhite Restaurant Group, LLC in the

amount of $10,218.66, plus court costs, on March 20, 2015 (A.P. Dkt. # 22). This judgment was a default judgment because the Debtor failed to appear at the State Court on time. Her testimony was that she was caught in traffic and arrived at the court only after the judgment had been entered. The State Court did not make any findings about the nature of the Debtor's actions, but only heard evidence as to damages.

On February 25, 2016, the Debtor and her husband filed a joint bankruptcy petition under chapter 7 of the Bankruptcy Code (Bankr. Dkt. # 1). During the pendency of their bankruptcy, the Creditor filed this adversary proceeding (A.P. Dkt. # 1).

Because timing is important in this adversary proceeding, a summation of the relevant events is in order. The following dates took place in 2014:

| | |
|---|---|
| Sept. 22 | Performance Agreement signed by both parties |
| Oct. 22 | Check for $7,000 delivered to Creditor |
| Oct. 23 | Creditor deposited the Debtor's check |
| Oct. 25 | Band performed at the Debtor's restaurant |
| Oct. 26 | Debtor stopped payment on the check |
| Oct. 28 | Check returned for "not sufficient funds" |
| Oct. 29 | Creditor re-deposited the check |
| Nov. 3 | Check returned for "stop payment" order |

## III. <u>CONCLUSIONS OF LAW</u>

The Creditor asserts that its $10,218.66 judgment should be nondischargeable pursuant to § 523(a)(2)(A)[5] and/or (a)(6).  The Creditor bears the burden of proof of establishing, by a preponderance of the evidence, that the debt in question should be excepted from discharge.  *Grogan v. Garner*, 498 U.S. 279, 286 (1991).  This is a high burden for the Creditor to carry.  As the Fifth Circuit has noted, "exceptions to discharge must be strictly construed against a creditor and liberally construed in favor of a debtor so that the debtor may be afforded a fresh start."  *Hudson v. Raggio & Raggio, Inc. (In re Hudson),* 106 F.3d 355, 356 (5th Cir. 1997).

Before addressing the merits of these claims, however, the Court must first consider whether collateral estoppel applies here.

### A.    Collateral Estoppel

The Creditor obtained a default judgment in the State Court prior to the bankruptcy filing.  The default judgment was awarded based on the failure of the Debtor to contest the Creditor's allegations.  The evidence in the State Court was limited to the damages incurred by the Creditor.  On the basis of the default judgment received there, the Creditor asserted that collateral estoppel should preclude the Debtor from contesting any factual issues here.

---

[5] While the pleadings simply reference § 523(a)(2), at trial the Creditor clarified that it is claiming a violation of § 523(a)(2)(A) and not § 523(a)(2)(B) or (C).

At the outset, the Court recognizes that the judgment is final and nonappealable. The parties agree that the judgment was entered on March 20, 2015 for $10,218.66 plus court costs, and no one is asking this Court to set that judgment aside (A.P. Dkt. # 22). The judgment is an unsecured debt in the Debtor's bankruptcy case and will not be disturbed by the outcome of this adversary proceeding. The only question for this Court is whether that debt is dischargeable. In other words, the amount of the judgment has been established and the only issue is whether this Court is precluded from considering any other factual issues underpinning the judgment, as those facts relate to this action.

In deciding whether a state court judgment has preclusive effect, the Court must look "to the state that rendered the judgment to determine whether the courts of that state would afford the judgment preclusive effect." *Gober v. Terra + Corp. (In re Gober),* 100 F.3d 1195, 1201 (5th Cir. 1996). The state court judgment at issue was entered in a Tennessee court so Tennessee collateral estoppel rules will apply. In Tennessee, the "party invoking collateral estoppel has the burden of proof." *Mullins v. Tenn.,* 294 S.W.3d 529, 535 (Tenn. 2009). There are five requirements for issue preclusion in Tennessee:

> (1) that the issue to be precluded is identical to an issue decided in an earlier proceeding, (2) that the issue to be precluded was actually raised, litigated, and decided on the merits in the earlier

proceeding, (3) that the judgment in the earlier proceeding has become final, (4) that the party against whom collateral estoppel is asserted was a party or is in privity with a party to the earlier proceeding, and (5) that the party against whom collateral estoppel is asserted had a full and fair opportunity in the earlier proceeding to contest the issue now sought to be precluded.

*Id.* Beyond these requirements, the issue "must also have been necessary to the judgment." *Id.*

The Creditor's breach of contract claim was never "actually raised, litigated, and decided on the merits" in the State Court. The Creditor testified that the only evidence heard in the State Court was related to the damages incurred by the Creditor. With no issues being actually litigated or decided on the merits in the previous lawsuit, collateral estoppel does not apply. This Court is not precluded from hearing the allegations and defenses to the breach of contract case, as those facts relate to this dischargeability action.

### B.   Nondischargeability Under § 523(a)(2)(A)

The Creditor asserts that the judgment is nondischargeable pursuant to § 523(a)(2)(A), specifically alleging false representations and actual fraud. Section 523(a)(2)(A) provides:

(a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—

. . .

9

> (2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by—
>
> > (A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition;

11 U.S.C. § 523(a)(2)(A).

In construing § 523(a)(2)(A), the Fifth Circuit has distinguished between (1) false pretenses and false representations, and (2) actual fraud; giving a creditor two distinct paths to nondischargeability under that subsection. *Bank of La. v. Bercier (In re Bercier)*, 934 F.2d 689, 692 (5th Cir. 1991). The Creditor here has pleaded both false pretense/false representation and actual fraud.

### 1. *False Pretenses or False Representation*

For false pretenses and false representations, an objecting creditor must prove by a preponderance of the evidence that the debtor's representation was: (1) a knowing and fraudulent falsehood, (2) describing past or current facts (not future facts), (3) that was relied on by the other party. *Allison v. Roberts (In re Allison),* 960 F.2d 481, 483 (5th Cir. 1992). The Creditor's reliance need not be objectively reasonable, but merely subjectively justifiable. *Field v. Mans*, 516 U.S. 59, 76 (1995).

The inducement element is critical here. There is no proof of any fraudulent conduct or falsehood by the Debtor to induce performance.

Whether the Court examines the time the contract was executed, or the time the check was delivered to the Creditor, there were no false pretenses or false representations made by the Debtor to induce the Creditor perform. Rather, the evidence is clear that both parties intended to fully perform under the contract at all times until the Band's performance.

In addition, a check is not considered a representation in this context. *Williams v. U.S.,* 458 U.S. 279, 284 (1982). By the testimony of both parties, the check was the only "communication" between the parties from the time the contract was entered into until November 3, 2014, the week after the performance. The U.S. Supreme Court has held that "a check is not a factual assertion at all, and therefore cannot be characterized as 'true' or 'false'." *Williams,* 458 U.S. at 284. Drawing from this principle, other courts have held that "[s]ince a check does not make any representation, it cannot make any *mis* representation." *Stewart v. East Tenn. Ins. Agency, Inc. (In re Union Sec. Mortgage Co.),* 25 F.3d 338, 341 (6th Cir. 1994)(emphasis in original); *see also AT&T Universal Card Services v. Mercer (In re Mercer),* 246 F.3d 391, 405-06 (5th Cir. 2001)(applying and explaining the *Williams* holding but declining to extend it to credit cards). The "mere issuance of a worthless check, even with knowledge that funds are not available in the account to cover the check, does not constitute a prima facie case of fraud, misrepresentation or false pretenses sufficient for nondischargeability under

§ 523(a)(2)(A)." *Spa Cover, Inc. v. Hatley (In re Hatley),* 2009 WL 5205385 at

*3 (Bankr. E.D. Tenn. Dec. 23, 2009).

Therefore, the check written by the Debtor was not a representation

and, thus, cannot be interpreted as a misrepresentation. The Debtor did not

misrepresent anything to the Creditor prior to entering into the Performance

Agreement or even prior to the performance. Moreover, the evidence is clear

that both parties genuinely intended to perform under the agreement.

Neither party was induced to enter into the agreement by false pretenses or a

false representation. Because the Debtor did not knowingly and fraudulently

represent a falsehood to the Creditor, this claim fails.

### 2. *Actual Fraud*

As this Court has recently noted, the Supreme Court's opinion in

*Husky International Electronics, Inc. v. Ritz (In re Ritz)*, 136 S.Ct. 1581

(2016) has altered what was a well-established five-element test for actual

fraud under § 523(a)(6). *See Higgins v. Nunnelee (In re Nunnelee),* 560 B.R.

277 (Bankr. N.D. Miss. 2016). Prior to *Ritz*, an objecting creditor was

required to prove by a preponderance of the evidence that:

(1) the debtor made representations;

(2) at the time they were made, the debtor knew they were false;

(3) the debtor made the representations with the intention and
purpose to deceive the creditor;

(4) the creditor relied on such representations (reliance does not have to be reasonable, just justifiable); and

(5) the creditor sustained losses as a proximate result of the representations.

*RecoverEdge L.P. v. Pentecost*, 44 F.3d 1284, 1293 (5th Cir. 1995). In *Ritz,* the Supreme Court held that a representation is not required. 136 S.Ct. at 1582. *Ritz* made clear that the "term 'actual fraud' . . . encompasses forms of fraud, like fraudulent conveyance schemes, that can be effected without a false representation." *Id.* at 1586.

The Supreme Court did not establish new elements for discerning "actual fraud," but it did provide general guidance of its interpretation of "actual fraud." The Supreme Court split "actual fraud" into two parts: actual and fraud. *Id.* "The word 'actual' has a simple meaning in the context of common-law fraud: It denotes any fraud that 'involv[es] moral turpitude or intentional wrong.'" *Id.* (quoting *Neal v. Clark,* 95 U.S. 704, 709 (1878)). Consequently, the term "actual" excludes constructive or implied fraud. *Id.* As to the fraud element, the Supreme Court did not define the term precisely, but it did note that fraud generally "connotes deception or trickery." *Id.*

Here, the Debtor's actions were not fraudulent by any standard. The *RecoverEdge* elements have not been met because there was no misrepresentation made by the Debtor to induce the Creditor's performance. As previously discussed, the Debtor and Creditor both entered into the

Performance Agreement with the intention of fully performing, and it was not until the day after the event that the Debtor issued the stop payment order.

Further, the stop payment order was not issued to defraud the Creditor under the new *Ritz* analysis.  It was issued with a good faith belief that the Creditor had failed to hold up its end of the bargain.  While the Debtor may have breached the contract, she did not commit "actual fraud" as defined by the *Ritz* court.  The Debtor acted to protect her interest under what she believed to be a breached contract.  The Debtor, thinking that the Creditor had failed to perform his part of the contract, stopped payment on the check because she felt entitled to do so under the contract.  While that belief may have been mistaken, it is enough to show that her motives were not deceptive or fraudulent.  Bearing in mind that the Creditor has the burden to prove the Debtor's actions amounted to actual fraud, the Court finds that it has not been able to prove the "moral turpitude or intentional wrong" required for actual fraud under §523(a)(2)(A).  *Ritz,* 136 S.Ct. at 1586.

Additionally, the debt in question cannot be said to be "obtained by," or "traceable to," the alleged fraud.  *Id.* at 1589.  The debt was incurred and the performance was induced independent of the alleged fraud; it was not

14

obtained by the alleged fraud.[6]   For these multiple reasons, the Creditor's

actual fraud claim under § 523(a)(2)(A) also fails.

### 3.   *Attorney's Fees Under § 523(d)*

At trial, both parties raised the issue of attorney's fees should the §

523(a)(2) claim fail.   The Debtor requested an award of attorney's fees under

§ 523(d), and the Creditor argued that such an award would be improper

because the debt at issue is not a "consumer debt."   Section 523(d) provides:

> If a creditor requests a determination of dischargeability of a
> *consumer debt* under subsection (a)(2) of this section, and such
> debt is discharged, the court shall grant judgment in favor of the
> debtor for the costs of, and a reasonable attorney's fee for, the
> proceeding if the court finds that the position of the creditor was
> not substantially justified, except that the court shall not award
> such costs and fees if special circumstances would make the
> award unjust.

11 U.S.C. § 523(d)(emphasis added).   Clearly, the statue only allows a debtor

to recoup attorney's fees for a dischargeability action pertaining to consumer

debts.   The Creditor presented ample evidence to prove that the debt in

question was not a consumer debt, and the Debtor conceded this point at

trial.   As a result, an award of attorney's fees is not proper under §523(d).

---

[6] *See Ritz,* 136 S.Ct. at n.3. While the Supreme Court in dicta appears to have taken a broad
approach to the "obtained by" requirement, the Supreme Court ultimately recognized that the facts
before it were "unusual" and refrained from deciding "whether the debt to Husky was 'obtained by'
Ritz' asset-transfer scheme." *Id.*

## C.     Nondischargeability Under § 523(a)(6)

The remaining claim—that the Debtor willfully and maliciously injured the Creditor—deserves careful consideration.   As opposed to § 523(a)(2) claims, there is no temporal element in §523(a)(6).   Inducement is not required and timing is not a factor.   Section 523(a)(6) provides:

> **(a)** A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—
>
> . . .
>
> **(6)** for willful and malicious injury by the debtor to another entity or to the property of another entity;

11 U.S.C. § 523(a)(6).

The Circuit Courts of Appeals have developed different approaches to interpreting "willful and malicious."   *Patch v. Patch (In re Patch),* 526 F.3d 1176, 1180 (8th Cir. 2008)(separating willful and malicious and adopting a subjective approach); *Carillo v. Su (In re Su),* 290 F.3d 1140 (9th Cir. 2002)(evaluating the different approaches and adopting the subjective approach); *Markowitz v. Campbell (In re Markowitz),* 190 F.3d 455 (6th Cir.1999)(subjective approach); *Miller v. J.D. Abrams Inc. (In re Miller),* 156 F.3d 598 (5th Cir.1998)(objective approach).   The approach taken by the Fifth Circuit's has evolved over time into what it is today.   For that reason, a short

history of the Fifth Circuit's approach to § 523(a)(6) claims is helpful to fully understand the current test.

### 1.    *Fifth Circuit Standard*

The Fifth Circuit, prior to *Kawaauhau v. Gieger*, 523 U.S. 57 (1998), held that "for willfulness and malice to prevent discharge under § 523(a)(6), the debtor must have intended the actual injury that resulted." *Corley v. Delaney (In re Delaney),* 97 F.3d 800, 802 (5th Cir. 1996); *see also Kelt v. Quezada (In re Quezada),* 718 F.2d 121, 123 (5th Cir.1983), *cert. denied,* 467 U.S. 1217 (1984).   But, alongside this standard, a caveat was also recognized—that the debtor must have acted "without just cause or excuse." *Vickers v. Home Indem. Co.,* 546 F.2d 1149 (5th Cir. 1997); *Seven Elves, Inc. v. Eskenazi,* 704 F.2d 241, 245 (5th Cir. 1983).

The Supreme Court later found that the "just cause or excuse" qualifier had failed "to produce a clear standard." *Miller v. J.D. Abrams, Inc. (In re Miller),* 156 F.3d 598, 605 (5th Cir. 1998)(holding that the *Geiger* decision "displaced" the Fifth Circuit's definition of "willful . . . injury").[7]   As a result, the Court held in *Geiger* that § 523(a)(6) applies to "acts done with the actual intent to cause injury," and does not except from discharge debts arising only from negligently or recklessly inflicted injuries. *Geiger,* 523 U.S. at 59.   As a

---

[7] The Fifth Circuit's pre-*Geiger* test was based on the Supreme Court's decision in *Tinker v. Colwell,* 193 U.S. 473 (1904), which held that "[m]alice . . . means a wrongful act, done intentionally, without just cause or excuse." *Tinker,* 193 U.S. at 485-86.

result, the Fifth Circuit dropped the exception—"without just cause or excuse," and instead adopted a new test: "for a debt to be nondischargeable, a debtor must have acted with 'objective substantial certainty or subjective motive' to inflict injury." *Miller*, 156 F.3d at 603.   The Fifth Circuit anticipated the problems that might arise from removing the "just case or excuse" exception from its test, and to clarify the new test stated:

> Eliminating the "just cause or excuse" exception would not ensnare those who have acted under "an honest, but mistaken belief." Such an individual cannot be said to have intentionally caused injury, since legally cognizable injury would not meet the test of "not substantially certain to result," in the absence of the fact about which there has been mistake.

*Id.* at 606.

Post-*Miller*, courts in the Fifth Circuit wrestled with how to apply the new standard in a way that did not read "malicious" out of the statute altogether. *Williams v. Int. Brotherhood of Electrical Workers (In re Williams),* 337 F.3d 504, 508-10 (5th Cir. 2003)(reading "injury" broadly); *Gene Koury Auto Sales v. Westmoreland (In re Westmoreland),* 31 Fed. Appx. 838, at *2-3 (5th Cir. Jan. 30, 2002)(reading "harm" broadly); *Texas v. Walker (In re Walker),* 142 F.3d 813, 823 (5th Cir. 1998)(asking whether the debtor intended the injury that resulted from his intentional actions); *Richard McBrier Contractor v. McDaniel (In re McDaniel),* 368 B.R. 515, 519 (Bankr. M.D. La. 2007)(reading *Geiger* and *Miller* together to require "intent to cause

harm"); *Wilkes v. Mitchell (In re Mitchell),* A.P. No. 05-01133-NPO at *4-5 (Bankr. N.D. Miss. Dec. 5, 2006)(distinguishing an intentional act from its intended consequences).   Cases where the debtor acted intentionally and injured another party but where the debtor's actions were innocuous or sufficiently justified under the circumstances became difficult to reconcile with the test in place.

This tension was relieved by *Berry v. Vollbracht (In re Vollbracht),* 276 Fed. Appx. 360 (5th Cir. 2007).   There, the Fifth Circuit recognized a fundamental exception, which had previously been implicitly recognized in different ways:

> . . . an injury levied as a legitimate response to someone else's actions is usually the result of a "subjective motive to cause harm" and actions that can have an "objective substantial certainty" of causing harm. Yet such an injury cannot be "willful and malicious" under § 523(a)(6). Consequently, we hold that our two-part test must countenance the actions of the injured party. That is, for an injury to be "willful and malicious" it must satisfy our two-part test *and not be sufficiently justified under the circumstances* to render it not "willful and malicious."

*Vollbracht,* 276 Fed. Appx. at 362 (emphasis added).   This clarification made explicit what had been implicit in the language of § 523(a)(6).   Currently, the Fifth Circuit still reads "willful and malicious" as a "unitary concept," *Miller*, 156 F.3d at 603, but this caveat is back.   *Vollbracht,* 276 Fed. Appx. at 362.

## 2.     *Contract Claims Brought Under § 523(a)(6)*

In addition to § 523(a)(6) claims generally, a body of law has arisen around a more specific category of § 523(a)(6) claims, namely breach of contract claims.  Should a simple breach of contract, when done intentionally, be nondischargeable in bankruptcy?  The answer seems to be no, but when applying the § 523(a)(6) standards courts have had to wrestle with where to draw the line.   Within this field some courts require a tortious act to accompany the breach to satisfy the "willful and malicious" standard.  *See, e.g., Steier v. Best (In re Best),* 109 Fed. Appx. 1, at *6 (6th Cir. 2004); *Pertralia v. Jercich (In re Jercich),* 238 F.3d 1202, 1205 (9th Cir. 2001); *Dowdy v. Bower (In re Bower),* 151 F.3d 1028, at *2 (4th Cir. 1998).  Others have not drawn a hard line but have held more broadly that a "breach must be both willful and malicious. . . . '[U]nless [the debtors] act with malice by intending or fully expecting to harm the economic interests of the creditor, such a breach of contract does not, in and of itself, preclude a discharge.'" *First Nat'l Bank of Fayetteville, Ark. v. Phillips (In re Phillips),* 882 F.2d 302, 305 (8th Cir. 1989)(quoting *In re Long,* 774 F.2d 875, 882 (8th Cir. 1985)).

The Fifth Circuit follows the latter approach, not requiring a separate tort to accompany a breach of contract.   *Walker,* 142 F.3d at 823-24.   The Fifth Circuit has addressed this issue in-depth in *Williams v. Int'l*

*Brotherhood of Electrical Workers Local 520 (In re Williams)*, 337 F.3d 504 (5th Cir. 2003) and *Texas v. Walker (In re Walker),* 142 F.3d 813 (5th Cir. 1998). In *Walker,* the debtor was a medical professional and employee of the University of Texas.  142 F.3d at 815.  Under a contract between the University of Texas and Walker, Walker was required to remit all professional fees he earned to the University.  *Id.*  He failed to do so, and later filed for bankruptcy.  *Id.* at 816.  The Fifth Circuit held that the debt may be nondischargeable under §523(a)(6), but that more facts would have to be found to make the determination.  *Id.* at 824.

> If a factfinder were to decide that Walker knew of his obligations under the . . . contract and its by-laws, either at the time he signed the contract or received [instructions to withhold and remit all professional fees], then it might also find that Walker knowingly retained his professional fees in violation of the [contract], an act which he knew would necessarily cause the University's injury. This, in turn, could result in a finding of "willful and malicious injury."

*Id.*

In the subsequent *Williams* case, an independent electrical contractor (Williams) breached a contract with a union of electricians.  337 F.3d at 506. The two parties had entered into a collective bargaining agreement, whereby Williams agreed to hire exclusively union members for a certain project.  *Id.* at 507.  After having other issues with the union, however, Williams hired non-union workers to complete the project on time.  *Id.*  The Court looked to

21

*Walker* for aid in deciphering the "willful and malicious" standard. *Id.* at 510. In doing so it held that *Walker* stood for the proposition that "a knowing breach of a clear contractual obligation that is certain to cause injury may prevent discharge under Section 523(a)(6), regardless of the existence of separate tortious conduct." *Id.* While recognizing the import of *Walker*, the Fifth Circuit focused more on the debtor's intent, reasoning that "the dischargeability of contractual debts under Section 523(a)(6) depends upon the *knowledge and intent* of the debtor at the time of the breach . . . ." *Id.* (emphasis added). Williams had knowingly and intentionally breached the contract, but he did not intend to injure the union. *Id.* at 510. Williams was motivated by his project deadline and not by any ill-will for the union. *Id.* As a result, the Fifth Circuit held that the debt was dischargeable. *Id.*

### 3. *Application to the Current Case*

The Debtor has admitted that she intentionally prevented the check from clearing and that she stopped payment on the check she wrote to the Creditor. These actions were done intentionally and with objective knowledge that the Creditor would be financially injured as a result. The question is whether her actions were substantially justified under the circumstances.

To be sure, this is a close case. The Court heard testimony from the Debtor and from Rollin Riggs, both of whom provided credible testimony as to the fact of which they had knowledge. According to the evidence, the Debtor

and Creditor both intended to perform under the agreement and fulfill all their obligations as promised.   The night of the event, the Debtor was disappointed with the turnout and was frustrated that neither the Creditor nor the Band had promoted the event, or even included the performance on the Band's list of upcoming shows.   While it is clear from the Performance Agreement that neither the Creditor nor the Band were under any obligation to promote the event, the Debtor firmly believed that the Creditor had neglected its contractual duties.   Even so, this belief is insufficient to substantially justify the Debtor's actions.   Her subjective belief that the Creditor and the Band were obligated to promote the event was clearly misplaced given the plain language of the Performance Agreement.   Such confusion, by itself, does not rise to the level of sufficient justification contemplated in *Vollbracht*.   276 Fed. Appx. at 362.

More importantly, however, the Debtor credibly testified that the Band failed to perform for the requisite amount of time.   Pursuant to the Performance Agreement, the band was supposed to play for approximately 1 hour and 30 minutes.   Instead, the Band left after only 30 or 40 minutes.   The Debtor was the only trial witness that was present for the event, and she credibly testified to the Band's time of arrival and time of departure.   The Debtor firmly believed the Creditor failed to perform on this aspect of the agreement as well.

The Court finds that the Debtor's intent was to preserve her rights under what she believed to be a breached contract.[8]  Her actions were not done to maliciously harm the Creditor.  The Debtor was sufficiently justified under the circumstances by her subjective intent to preserve her contractual rights.  Further, the situation before the Court is not "a knowing breach of a clear contractual obligation that is certain to cause injury" as anticipated in *Williams*. 337 F.3d at 510.  The Debtor's credible testimony showed that she legitimately believed her withholding payment was justified because the Creditor had breached the contract.

## IV.  CONCLUSION

The Creditor has a high burden when seeking to prove that a debt is nondischargeable.  *State v. Soileau (In re Soileau),* 488 F.3d 302, 311 (5th Cir. 2007).  "Any exception to the general discharge of a debtor's debts is strictly governed by the Code and construed narrowly in favor of the debtor and against the creditor requesting the determination."  *Citizens Bank & Trust Co. v. Case* (*In re Case*), 937 F.2d 1014, 1024 (5th Cir. 1991).  The Creditor has not overcome its burden on its § 523 claims.

A separate final judgment will be entered in accordance herewith.

##END OF ORDER##

---

[8] The Court expresses no opinion about whether the Creditor actually breached the contract—only that the Debtor had a good faith belief that the Creditor breached the contract.  The State Court judgment is now final and non-appealable.  It remains a valid debt in this case but a debt that is dischargeable.